**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  23-cv-926

VALUED INC., a Colorado corporation d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc.,

       Plaintiff,

v.

BARRY JACOB SITLER a/k/a JAKE SITLER, an individual; HEATHER MACKEY, an individual; and JW INNOVATION CO., a Pennsylvania limited liability company,

       Defendanst.

---

# COMPLAINT

---

## INTRODUCTION

1.    This is an action concerning a concerted effort by Defendants Barry Jacob "Jake" Sitler, an individual ("**Sitler**"), Heather Mackey, an individual ("**Mackey**"), and JW Innovation Co., a Pennsylvania limited liability company ("**JW**") to deliberately harm and steal from Plaintiff Valued Inc. a Colorado corporation d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc. ("**FOL**") to set up a competing business.

## JURISDICTION

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

3.    This Court has personal jurisdiction over the non-resident Defendants pursuant to Colorado's long-arm statute, C.R.S. § 13-1-124(1)(a) and (b) based on their

breach of contracts with a Colorado company, tortious acts committed within this state, transaction of business within this state, and tortious conduct outside Colorado that caused injury within the state.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

5.     FOL is a Colorado corporation with its principal place of business located at 1101 Poplar Street, Leadville, CO 80461.  FOL is a company that sells CBD products in retail locations and over the internet. Floyd Landis ("**Landis**") is FOL's founder and CEO.

6.     Sitler is an adult resident of the state of Pennsylvania, who resides at 103 S. Clay Street, Marietta, PA 17547.

7.     Mackey is an adult resident of the state of Georgia, who resides at 6141 Highway 95, Rock Spring, GA 30739.

8.     JW is a Pennsylvania corporation with its principal place of business located at 103 S. Clay Street, Marietta, PA 17547. Sitler is the founder and owner of JW Innovation, and its principal place of business is Sitler's home address.  On information and belief, all of the members of JW are residents of states other than Colorado.

## FACTS

9.     Landis originally met Sitler through the cycling community.  Sitler visited Colorado and met Landis in Leadville, Colorado at FOL's headquarters.  Sitler told Landis that his cycling career had been cut short when he was hit by a van while training and suffered serious injuries.  However, Sitler claimed that he had recovered to the point that he was capable of participating in competitive cycling. On the basis of Sitler's representation, Landis hired Sitler in late 2018 to join a cycling team Landis had founded.

10.     In January 2019, Sitler convinced Landis to hire him as an employee of FOL's CBD business.  Sitler indicated that he intended to focus primarily on his cycling career, but would work part-time for FOL as he trained resume a professional cycling career.

11.     In March 2019, Sitler told Landis that his injuries prevented him from continuing to pursue professional cycling.  Sitler asked to become a full-time FOL employee. Landis agreed to hire Sitler and paid him a generous salary.  At the time, FOL had no operations in Pennsylvania.  During the course and scope of his employment with FOL, Sitler travelled to Colorado, managed accounts for customers in Colorado, and interacted and took direction from FOL's officers in Colorado.

12.     Between 2019 and 2020, Sitler prosecuted a lawsuit against the driver of the van who had hit him.  Unknown to Landis, Sitler had fully recovered and was just pretending that he had ongoing injuries.  In fact, Sitler secretly participated in cycling races during this period under an alias, despite claiming in the lawsuit that his injuries were severe and prevented him from cycling.  Sitler also secured significant funds from the insurer of the vehicle based on Sitler's false claims of severe, ongoing injury.

13.     Throughout 2019, FOL spent considerable resources building a facility near Sitler's home in Pennsylvania in which hemp would be processed to make CBD.  The effort involved contracting with more than fifty farmers to grow hemp.  During that year, FOL and Landis personally performed a monumental amount of manual labor building the facilities and harvesting, drying and cryogenically freezing hundreds of thousands of pounds of hemp. Sitler refused to help with any physical tasks, falsely claiming that he was in too much pain to assist in physical activities.  Despite his calculated shirking of duties, Sitler claimed to be the "hardest working employee" at FOL.

14.     Given Sitler's feigned injuries, FOL carved out a position for Sitler to help manage FOL's accounts with wholesale convenience stores who sold FOL products, as well

as accounts in which FOL manufactured white-label products that were sold under different brand names.  This included accounts located in Colorado.  Sitler had no prior experience in this kind of work, and everything he learned about the wholesale CBD industry he learned from FOL.

15.     With significant investment and training from FOL, Sitler's role in the company quickly grew from 2019 to early 2020, and he became an integral part of FOL's management and operations.

16.     During this period, Sitler became close to Mackey, who was FOL's bookkeeper at the time.  As someone who needed access to sensitive FOL financial information to perform her work, Mackey had signed a rigorous Non-Disclosure Agreement with FOL. Despite this, Mackey routinely disclosed Confidential and Proprietary FOL information to Sitler with no proper FOL business purpose for doing so as the two became close friends.

17.     In addition to avoiding hard work, Sitler became aggressive and abusive to other employees and executives of FOL.  FOL attempted to remediate Sitler's behavior, but Sitler continued to abuse FOL employees.  The situation came to a head in early 2020.  Given Sitler's unacceptable conduct, FOL began to take steps to terminate and replace Sitler.

18.     As FOL was preparing to terminate Sitler, the Covid pandemic and resulting quarantines lead to massive business disruptions and layoffs.  Given the unprecedented pandemic and the fact that Sitler had recently become the father of a newborn son, FOL made the humane decision to allow Sitler to continue his employment with FOL despite his terminable behavior.

19.     Unfortunately, Sitler's behavior became significantly worse throughout 2020. By the summer of 2020, Sitler had convinced Mackey that they were both underpaid and so should simply stop working and begin shirking any task if they felt they could conceal their non-performance from FOL.  For instance, although it was her sole responsibility, Mackey

stopped paying local sales taxes on FOL's online sales. FOL only uncovered Mackey's malfeasance around the time she resigned in November 2020, when FOL was shocked to discover that it owed hundreds of thousands of dollars in unpaid taxes and penalties.

20.     In August 2020, FOL became involved in a lawsuit with a group of investors who sought to seize FOL's assets in a hostile takeover. Sitler began communicating with the investors and sharing FOL information with them, including their lead attorney Christopher Dawes. As a result of these conversations, Sitler concluded that FOL would be too distracted to notice if he began stealing from the company, and in any event Sitler believed that FOL would likely fold and be unable to prosecute his theft even if they eventually discovered it.

21.     In November 2020 (while still ostensibly serving as a high-level manager for FOL), Sitler formed JW Innovation with the intent to sell FOL's inventory through his new company. In an attempt to recruit a fellow FOL employee, Sitler told the FOL employee that, because the corporate shell protects the individual owners, Sitler could steal from FOL without incurring personal liability. JW Innovation hired Mackey to serve as its bookkeeper.

22.     Using Confidential and Proprietary FOL information concerning FOL's finances, vendors and customers (much of it stolen by Mackey when she resigned employment with FOL), Mackey and Sitler began a covert operation to steal FOL ingredients, use them to manufacture copycat FOL products, and sell those products to FOL's customers.

23.     Sitler and Mackey created a website that mimicked FOL's website and marketed JW Innovation as a company that could white-label hemp and CBD products for other businesses. Essentially, JW Innovation was a clone of FOL's operations. On its website, Mackey and Sitler even included photos from news articles about FOL's hemp operations and presented them to the public as photos of JW Innovation's hemp-growing operations.

24.     One significant FOL customer for whom FOL white-labelled CBD products was Hugs Wellness Inc., d/b/a Hugs CBD ("Hugs").  FOL developed the relationship with Hugs, but put Sitler in charge of the Hugs account.

25.     While still employed by FOL and while servings as the manager for FOL's account with Hugs, Sitler began stealing CBD oil from FOL's Pennsylvania facilities and using it to manufacture CBD products (the same CBD products FOL was manufacturing), which JW Innovation than sold to Hugs in lieu of FOL sales.  In fact, Sitler manipulated the invoicing process to obscure the fact that Hugs was paying a new party.

26.     In sales to Hugs and other FOL customers, Sitler stole FOL products and used them to copy FOL's manufacturing processes and sell copied CBD products to FOL's customers using FOL's suppliers and existing relationships, while concealing from the customers that they were dealing with a new entity and not FOL.

27.     As JW Innovation's operations grew, Sitler and Mackey used their intimate knowledge of FOL's products, pricing, customer relationships, sourcing and manufacturing processes to develop a broad array of cloned FOL products.  As the Defendants grew bolder, JW Innovation began to offer FOL-cloned products at lower prices than FOL was able to offer.  The Defendants both: (1) knew all of FOL's price points and profit margins; and (2) could sell at cheaper prices because they didn't pay for raw CBD oil (they just stole it from FOL).

28.     In February 2021, Sitler unleashed a verbal tirade against an FOL executive for contacting Sitler before 9 a.m. on a weekday.  This was the last straw for FOL, and FOL fired Sitler.  Despite the termination for cause, FOL provided Sitler with severance pay.  FOL was totally unaware at the time it terminated Sitler of Sitler's theft and other wrongdoing through JW Innovation.

29.     After his termination, Sitler trespassed onto FOL property and stole a Mercedes Sprinter Van (the "**Van**") that FOL had been using for deliveries. At the time Sitler

stole it, the Van contained tens of thousands of dollars of FOL products. Sitler hid the van and attempted to extort payments from FOL in exchange for returning FOL's Van to FOL.  During this time, the FOL products in the Van were exposed to high summer temperatures and were ruined.

30.     When FOL refused to "buy back" its own Van, Sitler went to a Mercedes dealer and sold it.  After considerable effort and expense, FOL was able to reacquire possession of the Van, but Sitler's actions placed a cloud on title that FOL has not been able to remove.

31.     In sum, while employed by FOL in positions of trust and confidence, Sitler and Mackey stole FOL's intellectual and personal property, diminished or eliminated the value of that intellectual and personal property, sold knock-off FOL products (made with stolen FOL ingredients) to FOL's customers, and then stole additional FOL property after Sitler was fired.  Both Sitler and Mackey used JW Innovation as the tool to accomplish and profit from their wrongdoing.

## COUNT I
### (Conversion Against Sitler)

32.     FOL incorporates by reference all of the foregoing allegations as though fully set forth herein.

33.     Sitler took FOL's property (CBD oil, the Van, and the contents in the Van), without FOL's permission and knowing that he had no right to the property.

34.     By taking property that belonged to FOL, Sitler exercised unauthorized dominion or ownership over personal property belonging to FOL.

35.     Despite demand, Sitler did not return the property taken from FOL.

36.     The perishable contents of the Van were destroyed as a result of Sitler's wrongful taking and keeping of the perishable contents

37.     As a result of the Sitler's conversion, FOL has suffered damages in an amount to be determined at trial.

## COUNT II
### (Trespass To Chattel Against All Defendants)

38.     FOL incorporates by reference all of the foregoing allegations as though fully set forth herein.

39.     Sitler took FOL's property (CBD oil, the Van, and the contents of the Van), without FOL's permission and knowing that he had no right to the property.

40.     By taking property that belonged to FOL, Sitler exercised unauthorized dominion or ownership over personal property belonging to FOL, impaired the value of that personal property, harmed FOL's buineess interests, and used the personal property in such a manner as to deprive FOL of its use and value permanently.

41.     Mackey took FOL information and data without FOL's permission and knowing that she had no right to the property.

42.     By taking property that belonged to FOL, Mackey exercised unauthorized dominion or ownership over personal property belonging to FOL, impaired the value of that personal property, harmed FOL's buineess interests, and used the personal property in such a manner as to deprive FOL of its use and value permanently.

43.     JW Innovation assisted Sitler and Mackey in taking property belonging to FOL, received and used the stolen property without FOL's permission and knowing that none of the Defendants had the right to the property.

44.     By taking property that belonged to FOL, JW Innovation exercised unauthorized dominion or ownership over personal property belonging to FOL, impaired the value of that personal property, harmed FOL's buineess interests, and used the personal property in such a manner as to deprive FOL of its use and value permanently.

45.     As a result of the Defendants' conversion, FOL has suffered damages in an amount to be determined at trial.

### COUNT III
### (Breach of Fiduciary Duty Against Sitler and Mackey)

46.     FOL incorporates by reference all of the foregoing allegations as though fully set forth herein.

47.     FOL placed Sitler and Mackey in high-level positions of trust and confidence.

48.     By virtue of their positions and the sensitive FOL information to which they were privy, and for the reasons further described above, Sitler and Mackey owed fiduciary duties to FOL.

49.     Sitler and Mackey breached their fiduciary duties to FOL, including among other things by virtue of the breaches described above and: by acting for their own benefit at FOL's expense; by usurping FOL corporate opportunities; by stealing FOL products and intellectual property; by having undisclosed interests in an FOL competitor who was actively subverting sales of FOL products to FOL customers; by concealing material information they had a duty to disclose and defrauding FOL; by failing to perform their job duties with reasonable confidence and causing FOL to suffer damages thereby; by acting in bad faith; and by breaching their duties of loyalty to FOL in every way possible.

50.     As a result of Sitler's and Mackey's breaches of fiduciary duty, FOL has suffered damages in an amount to be determined at trial.

### COUNT IV
### (Aiding and Abetting Breach of Fiduciary Duty Against JW)

51.     FOL incorporates by reference all of the foregoing allegations as though fully set forth herein.

52.     Sitler and Mackey owed fiduciary duties to FOL.

53.     Sitler and Mackey breached those duties.

54.     JW Innovation knew of Sitler's and Mackey's breaches of their fiduciary duties.

55.     JW Innovation knowingly and substantially assisted Sitler and Mackey in breaching their fiduciary duties to FOL, including by knowingly agreeing to serve as the corporate vehicle by which Sitler and Mackey would conduct their wrongful transactions and profit from their wrongdoing.

56.     As a result of JW Innovation's knowing and substantial assistance,  FOL has suffered damages in an amount to be determined at trial.

**<u>COUNT VI</u>**
**(Inentional Interference with Contractual and Prospective Economic Relations Against All Defendants)**

57.     FOL incorporates by reference all of the foregoing allegations as though fully set forth herein.

58.     FOL had contractual and prospective business relationships with their customers, including but not limited to Hugs.

59.     Defendants knew of FOL's contractual and prospective business relationships with its customers.

60.     By virtue of the conduct alleged above, Defendants interfered with the contractual and prospective business relationships between FOL and its customers, including but not limited to by: diverting FOL's business to JW Innovation; duping FOL's customers into believing JW Innovation was affiliated with FOL and they were buying though FOL and the FOL relationship; and stealing FOL's personal and intellectual property.

61.     Defendants' interference was intentional.

62.     Defendants' interference was improper.

63.     By virtue of Defendants' interference, FOL was suffered damages, including but not limited to the loss of sales and customer accounts, in an amount to be determined at trial.

10

## **COUNT VII**
### **(Breach of Contract Against Mackey)**

64.     FOL incorporates by reference all of the foregoing allegations as though fully set forth herein.

65.     FOL and Mackey entered into a Non-Disclosure Agreement as part of Mackey's employment with FOL and the Confidential and Proprietary Information FOL expected to and did disclose to Mackey as a part of her necessary job duties.

66.     By virtue of the conduct alleged above, Mackey breached her contractual obligations to FOL, including by disclosing and using FOL's Confidential and Proprietary Information without FOL's knowledge and consent.

67.     As a result of Mackey's breaches of her contractual obligations to FOL, FOL has suffered damages in an amount to be determined at trial.

## **COUNT VIII**
### **(Civil Conspiracy Against All Defendants)**

68.     FOL incorporates by reference all of the foregoing allegations as though fully set forth herein.

69.     Defendants acted with the common purpose of injuring FOL. They engaged in wrongful conduct to FOL's detriment in furtherance of their wrongful purpose. Each of the Defendants acted with an illegal purpose or used illegal means to achieve a legal purpose.

70.     The Defendants had a meeting of the minds or entered into a combination or agreement, with one or more other persons, including each other, with the wrongful intent to injure FOL and to engage in other wrongful conduct to FOL's detriment.

71.     Each of the Defendants committed one or more unlawful or wrongful overacts in furtherance of that object, including but not limited to the conduct described above, specifically including acts of fraud, breach of fiduciary duty, conversion, and aiding and abetting.

72.     As a result of Defendants' misconduct, FOL has suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, FOL requests that this Court enter judgment in its favor and against all Defendants in an amount to be proven at trial, including but not limited to:

1.     All damages resulting from the Defendants' tortious conduct, in an amount to be proven at trial;

2.     All damages resulting from Mackey's breaches of contract, in an amount to be proven at trial;

3.     All attorney fees and costs to the full extent permitted under any and all other applicable legal theories, statutes, or otherwise;

4.     All pre- and post-judgment interest; and

5.     Such other relief as this Court deems just and proper.

## **TRIAL BY JURY**

Plaintiffs are entitled to and hereby demands a trial by jury.

Dated: April 13, 2023

Respectfully submitted,

/s/ Daniel J. Vedra
Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 937-6540
Fax: (303) 937-6547
Email: dan@vedralaw.com