IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLORADO

Civil Action No.: **1:23-cv-00926-GPG-SKC**

VALUED INC., a Colorado Corporation d/b/a FLOYD'S OF LEADVILLE f/k/a FLOYD'S OF LEADVILLE, INC.

 Plaintiff

v.

BARRY JACOB SITLER A/K/A JAKE SITLER, an individual;
HEATHER MACKEY, an individual;
And JW INNOVATION CO., a Pennsylvania Limited liability company

 Defendants.

---

**DEFENDANTS BARRY JACOB SITLER A/K/A JAKE SITLER AND JW INNOVATION CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Defendants, Barry Jacob Sitler A/K/A Jake Sitler ("Sitler") and JW Innovation Co. ("JW", collectively "Defendants") hereby move for Partial Summary Judgment on Plaintiff's Civil Conspiracy, Aiding and Abetting Breach of Fiduciary Duty and Intentional Interference Claims and certain aspects of its Conversion and Trespass to Chattel claims pursuant to F.R.C.P. 56, and so states:

## I. INTRODUCTION

This case stems from Sitler's employment relationship with Plaintiff, Valued, Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc. ("Plaintiff" or "FOL") from 2019 to 2021.

When Sitler was employed by Plaintiff, Plaintiff was a seller of CBD related products in various locations in the United States and online.

## II.    UNDISPUTED FACTS

a. Sitler was employed by Plaintiff from early 2019 until February 2021, when Sitler was terminated. (See Affidavit of Barry Jacob Sitler attached hereto as Exhibit "A").

b. When Sitler was employed by Plaintiff, his primary function was as a seller of CBD related products in retail locations and online. (See Exhibit "A").

c. Sitler's duties included sales, product development, and business development. (See Exhibit "A").

d. During the time Sitler was employed by Plaintiff, Sitler became familiar with Heather Mackey, who now goes by the name Heather Gopperton ("Mackey"). (See Exhibit "A" and Affidavit of Heather Mackey, attached hereto as Exhibit "B").

e. Mackey served as the bookkeeper for Plaintiff from March 2019, until she resigned on November 30, 2020. (See Exhibits "B" and "A").

f. During Mackey's employment with Plaintiff and anytime thereafter, Mackey did not use any of Plaintiff's alleged confidential or proprietary data/information and intellectual property that she may have been privy to in connection with her role as bookkeeper, other than for Plaintiff's business. This included, but was not limited to data/information related to finances, vendors, customers and products or ingredients thereof. (See Exhibit "B").

g. At no time during Mackey's employment with Plaintiff or at any time thereafter, did Mackey take, misappropriate any alleged confidential or proprietary data/information

2

        and intellectual property belonging to Plaintiff, including but not limited to, information related to finances, vendors and customers or ingredients of their products. (See Exhibit "B").

h.    At no time during Mackey's employment with Plaintiff and anytime thereafter, did Mackey disclose to Sitler any alleged confidential or proprietary data/information and intellectual property belonging to Plaintiff, including but not limited to information related to finances, vendors and customers or ingredients of their products, nor was there any agreement between Sitler and Mackey for Mackey to share such information. (See Exhibits "A" and "B").

i.    At no time during Mackey's or Sitler's employment with Plaintiff or at any time thereafter, did Mackey or Sitler take any of Plaintiff's products, ingredients or have had any knowledge about any of Plaintiff's competitors, who may have been actively subverting sales of Plaintiff's products to Plaintiff's customers. (See Exhibit "B").

j.    In the late fall of 2020, due to financial concerns and the loss of Sitler's wife's job within the company, Sitler formed JW Innovation Co. ("JW") with Wayne Bendistis. (See Exhibit "A").

k.    Before doing so, Sitler discussed the issue with Floyd Landis ("Landis"), who was the CEO of Plaintiff and who Plaintiff is named after. Sitler wanted to continue to maintain his position with Plaintiff, and advised Landis that Sitler was going to form a business in an effort to increase his income. Sitler also advised that his business would not compete against the primary emphasis of Plaintiff's business, to which Landis had no problem with. That concept became JW, which would serve primarily as a broker in

       CBD related products with manufacturing of same. (See Exhibit "A")(See also portions of deposition transcript of Floyd Landis attached hereto as Composite Exhibit "C", pg. 10, line 22 through pg. 11, line 11).

l. Mackey had no role whatsoever in the formation of JW, nor the creation of any website for JW. In fact, she did not become aware of the existence of JW until several months after she resigned from Plaintiff. (See Exhibits "A" and "B").

m. Mackey became aware of JW's existence from Sitler, who advised that he had left Plaintiff, and asked Mackey if she would perform bookkeeping services for JW, to which she agreed to. Mackey performed only bookkeeping services for JW for only a few months before JW ceased operations. Mackey had no knowledge of JW before Sitler approached Mackey in the late winter/early spring of 2021 about performing said services. (See Exhibits "A" and "B").

n. At no time during Mackey's tenure employed by Plaintiff or at any time thereafter, did Sitler or Mackey have any role in convincing Plaintiff's customers that JW was affiliated with Plaintiff, or that the customers were buying through Plaintiff and the relationship was intentional. (See Exhibits "A" and "B").

o. Sitler was terminated in February 2021 for stealing Plaintiff's accounts. (See Exhibit "A" and Composite Exhibit "C", pg.127, line 1 through pg. 129, line 4).

p. After Sitler was terminated from Plaintiff, he began working for a company called Hugs Wellness, Inc. ("Hugs") in a similar capacity to his employment with Plaintiff. (See Exhibit "A").

q.  At no time did Sitler enter a contractual agreement with Plaintiff while employed by it or after he was terminated, that would have obligated Sitler not to work for any other company that may have been a competitor of Plaintiff's, or that would have precluded him from working for a company that was selling CBD related products in the same store as Plaintiff. (See Exhibit "A").

r.  At no time did Sitler have any communications with Sheetz (convenience store) officials relative to Plaintiff's products or Sheetz' relationship with Plaintiff. (See Exhibit "A").

s.  At the time, Sheetz offered a variety of CBD related products from various sources, including Plaintiff. (See Exhibit "A").

t.  Sitler was advised that Landis, upon learning that Hugs was in the process of placing products in Sheetz, threatened Sheetz with litigation and as a result thereof, Sheetz terminated any business relationship with both Plaintiff and Hugs. (See Exhibit "A").

u.  Landis, the CEO of Plaintiff confirmed as such. (See deposition transcript of Floyd Landis, pg. 11, lines 8-11, pg. 101, line 9 through pg. 103, line 15).

v.  At no time during JW's existence did JW have any relationship with Sheetz, contractually or otherwise. After being terminated by Plaintiff, any relationship Sitler had with Sheetz was limited to his role for Hugs. (See Exhibit "A").

w.  Plaintiff alleges in Count I (Conversion) and Count II (Trespass to Chattels) of Plaintiff's Complaint that Sitler took Plaintiff's property (CBD oil, the Van, the contents of the Van). The Van and its contents were returned to Plaintiff. While Sitler denies the claims made in Counts I and II, the sequence of events surrounding the CBD

      oil, the Van, the contents of the Van had absolutely no connection to JW. (See Exhibit "A").

x.    Hugs relationship with Plaintiff entered around Plaintiff being compensated as a broker introducing Hugs to a manufacturer of CBD related products. Sitler never advised Hugs representatives to not use any of Plaintiff's referred to manufacturers, nor work with Plaintiff. (See Exhibit "A").

### III.    SUMMARY JUDGMENT STANDARD

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary and "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Summary Judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party's initial burden is to show there are no genuine disputes of material fact and may be discharged by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The burden then shifts to the non-moving party, who must "set forth specific facts showing that there is a genuine issue for trial," without resting on "mere allegations" in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 259 (1986). To survive summary judgment the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## IV.     ARGUMENT

**a.     There is no evidence of a conspiracy.**

A prima facie case of civil conspiracy requires Plaintiff to illustrate that there was an "agreement" or "meeting of the minds" with regard to the unlawful course of action. *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *Double Oak Const., LLC v Cornerstone Development Intern, LLC.*, 97 P.3d 140, 146 (Ct. of Appeals 2003). A court may not infer the agreement necessary to form a conspiracy; the plaintiff must present evidence of such an agreement. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). Although evidence of an express or written agreement is not necessary, there must be some indicia of agreement in an unlawful means or end. *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1326-27 (Colo. App. 1992); *Powell Prods. v. Marks*, 948 F. Supp. 1469, 1480 (D. Colo. 1996) (The "[m]ere agreement to do something that happens to aid in the commission of a tort, without more, does not constitute civil conspiracy.").

Plaintiff alleges that "using confidential information and proprietary FOL information concerning FOL's finances, vendors and customers (much of it stolen by Mackey when she resigned employment with FOL), Mackey and Sitler began a covert operation to steal FOL's ingredients to use them to manufacture copycat FOL products and sell those products to FOL's customers. (See ¶ 22 of Plaintiff's Complaint). Plaintiff also alleged Sitler and Mackey created a website that mimicked FOL's website that mimicked FOL's website and marketed JW Innovation as a company that could white-label hemp and CBD Products for other businesses. (See ¶ 22 of Plaintiff's Complaint). Plaintiff also alleged that "As JW Innovation's operations grew, Sitler and

7

Macky used their intimate knowledge of FOL's products, customer relationships, sourcing and manufacturing processes to develop a broad array of cloned FOL products. (See ¶ 27 of Plaintiff's Complaint). There is simply no evidence in support of Plaintiff's allegations. In fact, both Mackey and Sitler deny any of the conduct alleged ever took place, nor that there was an agreement to do so. (See Exhibits "A" and "B"). Additionally, Macky was not aware of JW's existence until several months after she resigned from Plaintiff. (See Exhibits "A" and "B"). Accordingly, Plaintiff cannot establish that Mackey was part of any conspiracy.

A conspiracy requires more than one alleged conspirator and, as a matter of law, a legal entity and its agents acting within the scope of their authority cannot be conspirators for purposes of establishing a conspiracy. *Pitman v. Larson Distributing Co.*, 724 P.2d 1379, 1390 (Colo. App. 1986). This is because a person cannot be held to have conspired with himself. *Rockwood Grader Corp. v. Bockhaus*, 129 Colo. 399, 270 P.2d 193, 196-97 (1954). Accordingly, Sitler and JW are to be treated as one "conspirator" since it is Sitler, whether it be individually or in his capacity for JW that was the conspirator. Based on the foregoing, summary judgment is proper in favor of Sitler and JW on Plaintiff's claim for Civil Conspiracy.

  **b.** **Summary Judgment is Appropriate with Respect to Plaintiff's Claim Ffr Intentional Interference with Contractual and Prospective Business Relations because the Statute of Limitations on Plaintiff's Claim has Run.**

Pursuant to C.R.S. § 13-80-102(l)(a), all civil actions involving interference with relationships must be brought within two years of the cause accruing. *Sterenbuch v. Goss,* 266 P.3d 428, 432-33,436 (Colo. App. 2011) (holding that the two-year statute of limitations set forth in C.R.S. § 13-80-102(1) applies to claims for intentional interference with contract) and claim of

8

tortious interference with prospective business advantage *Tara Woods Ltd. Partnership v. Fannie Mae*, 731 F. Supp. 2d 1103, 1120 (D. Colorado 2010) A cause of action accrues when both the injury and cause are known, or should have been known through the exercise of reasonable diligence. C.R.S. 13-80-108(1). Sitler was terminated in February 2021 for stealing Plaintiff's accounts. (See Exhibit "A" and Composite Exhibit "C", pg.127, line 1 through pg. 129, line 4). Plaintiff filed this action on April 13, 2023, beyond the two-year statute of limitations, and as such this claim should be dismissed.

### c.     Plaintiff has failed to establish the elements of either Tortious Interference with Contractual and Prospective Economic Relations.

The elements of tortious interference with contract are: "(1) the plaintiff had a contract with another party; (2) the defendant knew or should have known of such contract's existence; (3) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff; and (4) the defendant's actions caused the plaintiff to incur damages." *Lutfi v. Brighton Community Hosp. Ass'n,* 40 P.3d 51, 58 (Colo. App. 2001).

Colorado also recognizes a claim for tortious interference with prospective contractual relations. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995); *Wasalco, Inc. v. El Paso County*, 689 P.2d 730, 732 (Colo. App. 1984); *Dolton v. Capitol Fed. Sav. & Loan Assn*., 642 P.2d 21, 23 (Colo. App. 1981). See *Occusafe, Inc. v. EG&G Rocky Flats, Inc*., 54 F.3d 618, 622 (10th Cir. 1995). While an underlying contract is not necessary for this tort, a plaintiff must establish intentional and improper actions by the defendant directed toward the plaintiff that were intended to prevent the formation of a contract between the plaintiff and a third party. *Amoco*, 908 P.2d at 500; *Employment Television Enterprises, LLC v. Barocas*, 100 P.3d 37, 45 (Colo. App.

9

2004); *Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 721 (Colo. App. 2002); *Wasalco*, 689 P.2d at 732; *Dolton*, 642 P.2d at 3. See RESTATEMENT (SECOND) OF TORTS § 766B (1979) (interference with prospective contractual relations consists of improperly and intentionally "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." There is no cause of action for merely negligent interference with prospective contractual relations. See RESTATEMENT (SECOND) OF TORTS § 766C (1979);

Plaintiff identified Sheetz and Hugs as the companies Plaintiff is seeking damages due to contractual and prospective business relationships that were interfered with by Sitler and JW. (See Composite Exhibit "C", pg. 96, line 9 through pg. 102, line 21). Since Sheetz and Hugs already had relationships with Plaintiff, Plaintiff cannot maintain that Sitler and/or JW took any actions that prevented the formation of a contract between the Plaintiff and either Hugs or Sheetz since they were both existing business relationships. Accordingly, the part of Plaintiff's claim related to prospective business relations is inapplicable.

As to Hugs, Landis acknowledged that they went out of business. (See Composite Exhibit "C", pg. 101, lines 18-23). Additionally, at no time did Sitler take any action whatsoever to induce Hugs not to continue with their relationship with Plaintiff. Hugs relationship with Plaintiff entered around Plaintiff being compensated as a broker introducing Hugs to a manufacturer of CBD related products. Sitler never advised Hugs representatives to not use any of Plaintiff's referred to manufacturers nor work with Plaintiff. (See Exhibit "A") and there is no evidence to contradict this.

In regard to Sheetz, which is a convenience store (See Composite Exhibit "C", pg. 155 lines 7-19), Landis found out that Hugs was going to be placing products in their stores and confronted Sheetz about it, warning them that they were going to have a fight on their hands. Subsequently, Sheetz decided not to do any more business with either Hugs or Plaintiff. Sitler was working for Hugs at the time and was part of the team that was working towards placing Hugs products in Sheetz stores. At no time, did Sitler have any discussion with any member of Sheetz about their relationship with Plaintiff, contractual or otherwise. The relationship between Sheetz and Plaintiff terminated after Landis threatened Sheetz with litigation if they placed Hugs products in their stores, which lead to Sheetz ceasing to do any business with either Hugs or Sheetz. Moreover, JW never had any business relationship with Sheetz whatsoever. (See Exhibit "A" and Composite Exhibit "C", pgs. 95-103). Accordingly, summary judgment should be granted in Defendants favor in relation to Plaintiff's Intentional Interference claim.

    d.    **Plaintiff's Conversion Claim**

Sitler maintains that no time during his tenure with Plaintiff or at any time thereafter, did he steal, misappropriate or convert from Plaintiff any of Plaintiff's products or product ingredients (including CBD oil) for his own use or for JW's. There were a couple instances where JW purchased extracts from the Plaintiff. This was done via cash by Wayne Bendistis. (See Exhibit "A", ¶ 11). There is no evidence to suggest otherwise. Accordingly, summary judgment should be granted in Sitler's favor as to any of Plaintiff's claim that Sitler converted Plaintiff's products or product ingredients (including CBD oil).

    e.    **Plaintiff's Trespass To Chattel Claim**

While Defendants deny the claims made by Plaintiff in its claim for Trespass to Chattel, the sequence of events pertaining to those allegations pertain to Sitler, there is no connection to JW to same. (See Exhibit "A"). Accordingly, Summary Judgment should be granted in favor of

JW on Plaintiff's claim for Trespass to Chattel against it. Additionally for the same reasons stated in Plaintiff's conversion claim, summary judgment should be granted in Sitler's favor as to any of Plaintiff's claim that Sitler converted to Plaintiff's products or product ingredients (including CBD oil). (See Exhibit "A").

### f. Aiding and Abetting a Breach of a Fiduciary Duty

Mackey was not aware of JW's existence for several months after she resigned from Plaintiff. (See Exhibit "B"). Therefore, JW could not have aided and abetted her. That leaves Sitler in either his individual capacity or on behalf of JW. Since Sitler cannot be aiding and abetting himself, Summary Judgment should be granted in favor of JW.

WHEREFORE, Defendants request the following relief:

1. Summary Judgment granted in Defendants favor on Plaintiff's claims for Intentional Interference with Contractual or Prospective Business Relations;

2. Summary Judgment granted in Defendants favor on Plaintiff's claim for Civil Conspiracy;

3. Summary Judgment granted in Defendants favor on Plaintiff's claim for Aiding and Abetting Breach of Fiduciary Duty as to JW;

4. Summary Judgment granted in Sitler's favor on Plaintiff's Conversion claim as it related to Plaintiff's products or product ingredients (including CBD oil);

5. Summary Judgment granted in JW's favor on Plaintiff's claim for Trespass to Chattel;

6. Summary Judgment granted in Sitler's favor on Plaintiff's Trespass to Chattel claim as it related to Plaintiff's products or product ingredients (including CBD oil).

7. Any other relief that this Court deems just and proper under the circumstances.

Dated: April 24, 2024.

                                                                           Respectfully submitted,

                                                                           */s/  Jeffrey M. Glotzer*  
                                                                           Jeffrey M. Glotzer, #25335  
                                                                           Frascona, Joiner, Goodman & Greenstein  
                                                                           4750 Table Mesa Drive  
                                                                           Boulder, CO 80305  
                                                                           303-494-3000  
                                                                           jeff@frascona.com  
                                                                           *Attorneys for Defendants Sitler and JW Innovation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was provided to the persons herein next designated by E-service, via E-Filing, on April 24, 2024.

Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, CO 80202
(303) 937-6540
dan@vedralaw.com
*Attorney for Plaintiff*

*Pro Se Defendant Heather Mackey*
6141 Highway 95
Rock Spring, GA 30739
Heather.e.mackey@gmail.com

Frascona, Joiner, Goodman & Greenstein

*/s/  Alyssa Colwell*
Alyssa Colwell | Paralegal