IN THE UNITED STATES DISTRICT COURT
FOR THE
I. DISTRICT OF COLORADO

Civil Action No.: **1:23-cv-00926-GPG-SKC**

VALUED INC., a Colorado Corporation d/b/a FLOYD'S OF LEADVILLE f/k/a FLOYD'S OF LEADVILLE

    Plaintiff

v.

BARRY JACOB SITLER, an individual;
HEATHER MACKEY, an individual;
And JW INNOVATION CO., a Pennsylvania Limited liability company

    Defendants.

---

### AFFIDAVIT OF BARRY JACOB SITLER

---

I, Barry Jacob Sitler, being of lawful age and duly sworn, hereby swear and affirm as follows.

1. My name is Barry Jacob Sitler, I am over the age of 18 years old, am of sound mine and I have personal knowledge of the matters contained in this affidavit.

2. I reside at 103 S. Clay Street, Marietta, Pennsylvania 17547.

3. I am also known as Jake Sitler.

4. I was employed by Plaintiff from early 2019 until February 2021, when I was terminated.

5. When I worked at Plaintiff, its primary function was as a seller of CBD related products in retail locations and online.

6. My duties with Plaintiff included sales, product development, and business development.

7. During the time that I was employed by Plaintiff, I became familiar with Heather Mackey, who now goes by the name Heather Gopperton ("Mackey"). Mackey served as the bookkeeper for Plaintiff for most of the time that I worked for Plaintiff until she resigned at the end of November 2020.

8. During my tenure at Plaintiff and anytime thereafter, Mackey did not share any of the Plaintiff's alleged confidential or proprietary data/information, and intellectual property with me in any manner whatsoever. Nor was there ever any agreement between me and Mackey for Mackey to share said information. This included but was not limited to data/information related to finances, vendors, customers and products or ingredients thereof.

9. In the late fall of 2020, due to financial concerns and the loss of my wife's job within the company, I formed JW Innovation Co. ("JW") with Wayne Bendistis.

10. Before doing so, I discussed the issue with Floyd Landis, who was a principal of Plaintiff and who it's named after. I wanted to continue to maintain my position with Plaintiff, and advised Landis that I was going to form a business in an effort to increase my income. I also advised that the JW's business would not compete against the primary emphasis of Plaintiff's business, to which he had no problem with. That concept became JW, which would serve primarily as a broker in CBD related products with some manufacturing of same.

11. At no time during my tenure with Plaintiff or at any time thereafter, did I steal, misappropriate or convert from Plaintiff any of Plaintiff's products or product ingredients (including CBD oil) for my own use or for JW's. There were a couple instances where JW purchased extracts from the Plaintiff. This was done via cash by Wayne Bendistis

2

12. At no time during my time during my tenure at Plaintiff or at any time thereafter, did I take any steps to actively subverting sales of Plaintiff's products to Plaintiff's customers to JW or any other individual or entity.

13. When Mackey resigned from Plaintiff in November 2020, I had had no communications with her about JW whatsoever or what I was doing to supplement my income and she had no role whatsoever in the formation of JW Innovation Co. ("JW"), nor the creation for any website for JW.

14. After I had been terminated by Plaintiff in February 2021, I contacted Mackey and asked her if she would perform bookkeeping services for JW, to which she agreed to. She performed bookkeeping services for JW for only a few months before it ceased operations. Mackey's role with JW was solely limited to bookkeeping activities.

15. After I was terminated from Plaintiff at no time during my time during my tenure at Plaintiff or at any time thereafter, did I have any role in convincing Plaintiff's customers that JW was affiliated with Plaintiff or that the customers were buying through Plaintiff and the relationship was intentional.

16. After I was terminated from Plaintiff, I began working for a company called Hug Wellness, Inc. ("Hugs") in a similar capacity to my employment with Plaintiff.

17. Hugs relationship with Plaintiff centered around Plaintiff being compensated as a broker by introducing Hugs to a manufacturer of CBD related products.

18. I never advised Hugs representatives to not use any of Plaintiff's referred to manufacturers nor work with Plaintiff.

19. When I was working at Hugs, we were in the process of putting CBD related products in Sheetz, which is a convenient store chain located in the Mid-Atlantic states. At the time, I was aware that Plaintiff had products that were being sold in Sheetz.

20. At no time did I enter a contractual agreement with Plaintiff during my tenure with it or after I was terminated that would have obligated me not to work for any other company that may have been a

competitor of Plaintiff or that would have precluded me from working for a company that was selling CBD related products in the same store as Plaintiff.

21. At no time did I have any communications with Sheetz officials relative to Plaintiff's products or its relationship with Plaintiff.

22. At the time, Sheetz offered a variety of CBD related products from various sources including Plaintiff.

23. I was advised that Landis, upon learning that Hugs was in the process of placing products in Sheetz threatened Sheetz with litigation and as a result thereof, Sheetz terminated any business relationship with both Plaintiff and Hugs.

24. At no time during its' existence did JW have relationship with Sheetz, contractually or otherwise. After being terminated by Plaintiff, any relationship I had with Sheetz was limited to my role for Hugs.

25. Plaintiff alleges in Count I (Conversion) and Count II (Trespass to Chattels) of Plaintiff's Complaint that I took Plaintiff's property (CBD oil, the Van, the contents of the Van). The Van and its' contents were returned to Plaintiff. While I deny the claims made in Counts I and II, the sequence of events surrounding the CBD oil, the Van, the contents of the Van had absolutely no connection to JW.

_Barry Jacob Sitler_ a/k/a _Jake Sitler_

Barry Jacob Sitler a/k/a Jake Sitler

COMMONWEALTH OF PENNSYLVANIA   )
                               ) ss.
COUNTY OF LANCASTER            )

Subscribed and sworn to me this 24 day of April 2024 by Barry Jacob Sitler.

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Sindia G. Angelini, Notary Public
Lancaster County
My commission expires August 13, 2025
Commission number 1403527
Member, Pennsylvania Association of Notaries

4